**STATE OF VERMONT**
**ENVIRONMENTAL COURT**

| | } | |
|---|---|---|
| **In re Gerlach Parking Area Permit** | } | **Docket No. 31-2-09 Vtec** |
| **(Appeal of Desch, et al)** | } | |
| | } | |
| | } | |

### Decision on Appellants' Motion for Partial Summary Judgment

Appellants Daniel Desch, Christopher Hancock, and Christopher Rohan (collectively "Appellants") have appealed the decision of the Montpelier Development Review Board ("DRB") granting Ralph and Sharon Gerlach ("the Gerlachs" or "Applicants") a zoning permit for a five-space parking area on the northern portion of a parcel in Montpelier identified as 7 Baldwin Street. Appellants are represented by Stephen A. Reynes, Esq. and Jesse L. Moorman, Esq.; the Gerlachs are represented by James A. Caffry, Esq.; the City of Montpelier ("City") is represented by Amanda Lafferty, Esq.; Interested Person Kenneth Randall appears pro se.

Appellants have presented the Court with a motion for partial summary judgment, asking the Court to rule as a matter of law that the proposed parking area is not in conformance with three provisions of the City of Montpelier Zoning and Subdivision Regulations ("Regulations"). Specifically, Appellants contend that the undisputed facts indicate that the proposal does not comply with Regulations § 707.C concerning parking buffer and screening requirements; Regulations § 704.C(1) and (2) concerning parking-access management; and Regulations § 703.A concerning provisions for pedestrian circulation.

The Gerlachs oppose the pending motion, contending that the aforementioned provisions either do not apply to the proposed parking area or are not regulatory in nature. In any event, the Gerlachs maintain that there are disputed issues of material fact precluding the Court from granting summary judgment in favor of Appellants on these three issues.[1]

### Factual Background

For the sole purpose of putting the pending motions in context, we recite the following facts, which we understand to be undisputed unless otherwise noted:

---

[1] The City did not file a response to the pending motion, but it did file a response to the Gerlachs' memorandum in opposition. Mr. Randall did not file any response to Appellants' motion.

1.     The Gerlachs own a parcel of land in the Civic Zoning District ("Civic District"), identified as 7 Baldwin Street.  The parcel is bordered to the south by Baldwin Street and to the north by Terrace Street; other developed properties adjoin the Gerlachs' property to the east and west.

2.     The Gerlach property is improved with a preexisting office building, attached garage and parking lot, both of which are accessed from and face Baldwin Street.

3.     The area to be improved with the proposed parking spaces occupies the northern portion of the Gerlach parcel.  This portion is currently wooded and abuts Terrace Street.

4.     On October 27, 2008, the Gerlachs submitted their application for design review[2] and site plan review approval.  The proposal initially consisted of seven parking spaces situated perpendicular to Terrace Street, each positioned approximately 6.25 feet from the street's southern edge.  Drivers would access each of the parking spaces directly from Terrace Street; a driver that pulls forward into one of the proposed spaces would be required to back into Terrace Street to exit.

5.     We presume that the Gerlachs propose to use the new parking spaces in connection with the preexisting office building at 7 Baldwin Street, but note that their application contains no specific representation on this point.  There does not appear to be any physical connection or path between the proposed parking area on the northern portion of the parcel and the preexisting office building on the southern portion.  Appellants' representation that users of the new parking spaces would be required to "walk around the block" appears uncontradicted.

6.     The Gerlachs' proposed parking area would be situated amidst existing vegetation on the northern boundary of their parcel.  The design incorporates the vegetation into the parking area by leaving a nine-foot gap on either side of the center parking space where two preexisting trees and vegetation will be preserved.  In other words, the center parking space would be surrounded on each side by a nine-foot-wide swath of vegetation.  Including the two vegetation gaps, the originally proposed seven-space parking area would span a total eighty-one feet along Terrace Street; each space would be twenty feet deep.

7.     The DRB conducted two public hearings on the Gerlach parking proposal.  Many neighbors attended one or both of the DRB hearings.  During the DRB review process, the

---

[2]   The Gerlach parcel is also in the Design Control District, which is an overlay zoning district pursuant to Regulations § 601.D.  See also Regulations § 305.

2

Gerlachs amended their application by reducing the number of parking spaces from seven to five. The revised five-space design retains the two spaces allotted for existing vegetation, but eliminates the outermost parking spaces on each side. This design leaves a place on either end for existing vegetation to remain and only two parking spaces on each side of the center parking space. The new five-space parking area spans sixty-three feet across Terrace Street; access would continue from Terrace Street for each space.

8. With this modification, approximately thirty-four feet of existing vegetation will be preserved on each of the eastern and western edges of the parking area. The 6.25 feet in front of Terrace Street would be cleared of vegetation, so as to allow access to and from each of the five parking spaces. The area within the parking spaces and between the spaces and Terrace Street would be covered with bank run gravel and crushed ledge; an impervious surface such as concrete or asphalt would not be used. Curb stops of concrete or wooden material would be used at the southern end of each parking space, together with individual signs to denote each parking space.

9. Terrace Street is a public right-of-way approximately nineteen to twenty feet wide, with a posted speed limit of twenty-five miles per hour. It has no sidewalks. The street marks the boundary between two zoning districts; to the south is the Civic District and to the north is the Medium Density Residential Zoning District ("MDR District"). Vehicular traffic on Terrace Street generally derives from the ingress and egress of neighborhood residents, although it is often used by pedestrians destined for the nearby State Capital Building. It appears that motorists currently park parallel to portions of Terrace Street, although on-street parking on either side of Terrace Street during the winter months is prohibited by City ordinance.

10. On January 22, 2009, the DRB granted the Gerlachs design review and site plan review approval to construct the revised five-space parking area. Appellants, who reside in the area, appealed that decision to this Court on February 20, 2009.

## Discussion

Appellants seek summary judgment on three questions raised in their sixteen-question Statement of Questions—Questions 1, 10, & 15—asking the Court to rule as a matter of law that the undisputed facts indicate that the proposed parking area fails to comply with three provisions of the Montpelier Zoning Regulations. Appellants claim that the project does not comply with Regulations § 707.C because there is not a sufficient buffer or sufficient screening between the

3

proposed parking area and the residential district to the north; that the project does not comply with § 704.C(1) and (2) because the design fails to employ proper access-management techniques; and that the proposal does not comply with § 703.A(2) because the project does not provide for adequate pedestrian circulation. We address each of Appellants' challenges below.

The Gerlachs oppose the pending motion in its entirety, contending that the three provisions either do not apply to their proposed parking area or are not regulatory in nature. In the event that these provisions do apply or do establish regulations, the Gerlachs assert that there are genuine disputes of material fact that make summary judgment inappropriate at this juncture of the proceedings.

Summary judgment may only be granted when "the pleadings, depositions, [and] answers to interrogatories, . . . together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to judgment as a matter of law." V.R.C.P. 56(c)(3). In reviewing a motion for summary judgment, "the Court must consider the facts presented in the light most favorable to the nonmoving party." Madkour v. Zoltak, 2007 VT 14, ¶ 12, 181 Vt. 347. The Court "place[s] the burden of proof on the moving party, and give[s] the opposing party the benefit of all reasonable doubts and inferences." Chapman v. Sparta, 167 Vt. 157, 159 (1997). With these standards in mind, we address whether Appellants are entitled to summary judgment on each of the three questions implicated by Appellants' pending motion.

Appellants contend that summary judgment is warranted on Question 1 of the Statement of Questions because the undisputed facts indicate that the proposed parking area fails to conform to the buffer and screening requirements in Regulations § 707.C. The Regulations impose two requirements on parking areas located "[w]here [a] non-residential district abuts a residential district." Regulations § 707.C. First, "the parking and/or loading spaces shall be no closer than 15 feet to the property line abutting the residential district,"[3] and second, "the spaces shall be screened and landscaped." Id. Because the Gerlachs' non-residential parcel is within fifteen feet of the boundary for the Medium Residential District ("MDR District"), the proposed parking area must meet these two requirements.

---

[3] The facts here can cause confusion, since the Gerlach property does not abut the "boundary line" to the nearby residential district; the boundary line for the MRD District is the center line of Terrace Street. Nonetheless, § 707.C requires a setback from the MRD District boundary of fifteen feet. To the extent that Appellants argue that § 707.C imposes a fifteen-foot setback from the edge of the Gerlach property, which is near the MRD District, we conclude that the language of § 707.C does not support such an argument.

The Gerlachs' project complies with the first requirement of § 707.C because the proposed parking area is more than fifteen feet from the residential district. According to the Regulations, the centerline of Terrace Street marks the boundary between the Civic District and the MDR District. Regulations § 6.02.B. Terrace Street is approximately nineteen to twenty feet wide, indicating that the southern edge of Terrace Street is approximately 9.5 to 10 feet from the residential district. The parties appear to agree that the proposed parking area is situated 6.25 feet from the southern edge of Terrace Street. The Gerlachs' proposed parking area is therefore approximately 15.75 to 16.25 feet from the boundary line of the nearby MRD District, thereby satisfying the first prong of Regulations § 707.C.

The parties dispute whether the proposed parking area complies with the second prong of § 707.C: that the parking area is screened and landscaped. The Gerlachs argue that the existing vegetation adequately screens the parking area from the view of surrounding properties because the proposed design allows for trees and other foliage to remain in the two nine-foot spaces on each side of the center parking space. Moreover, the revised design provides at least thirty-four feet of dense vegetation and brush on the eastern and western sides of the parking area. Appellants disagree, contending that this vegetation does nothing to screen the parking area from the view of residential buildings located directly across Terrace Street. The vegetation merely screens the parking area from the view of properties to the east and west, properties also located in the Civic District.

Whether the existing vegetation sufficiently screens the proposed parking lot from view to conform to Regulations § 707.C is a question of fact, and the Gerlachs have presented enough evidence to raise a genuine issue for trial concerning the adequacy of this screening. When viewing the facts in a light most favorable to the Gerlachs, we must therefore **DENY** Appellants' motion for summary judgment on Question 1.

Appellants also seek summary judgment on Question 10 of the Statement of Questions, contending that the parking area is inconsistent with the relevant access-management criteria set forth in Regulations § 704.C(1) and (2). The first of these subsections, § 704.C(1), states that "[p]roper access management techniques will be employed that generally follow the Vermont Agency of Transportation publication entitled 'Access Management Program Guidelines.'"

5

Regulations § 704.C(1). Six "[b]asic principals [sic] of access management" are then enumerated, which generally strive to minimize the potential for accidents.[4] Id.

Appellants argue that summary judgment is warranted in their favor because the Gerlachs' proposed parking area is inconsistent with the design standards and specifications in the Access Management Program Guidelines ("VTrans Guidelines"). In particular, Appellants argue that the Gerlachs' project design employs back-up maneuvers and creates multiple access points to Terrace Street, both of which are prohibited under the Guidelines. See generally Vt. Agency of Transp., Access Management Program Guidelines §§ 209, 220(3) (July 22, 2005), available at http://www.vtaccessmanagement.info/Documents/AccManProgGuidelinesRev 072205.pdf. Appellants essentially contend that a failure to comply with the VTrans Guidelines standards and specifications constitutes a failure to comply with § 704.C(1). We conclude that the language of § 704.C(1) does not support such a conclusion.

Appellants are correct in suggesting that § 704.C(1) mandates the utilization of proper access-management techniques in the process of designing parking areas. However, § 704.C(1) only requires that the techniques an applicant employs need only "generally follow" the VTrans Guidelines. Regulations § 704.C(1). Strict adherence to all of the access-management techniques outlined in the VTrans Guidelines is not necessary to comply with § 704.C(1). It is possible to achieve proper access management, irrespective of the standards and specifications in the VTrans Guidelines, so long as the project employs techniques that realize the applicable principles of access management enumerated in § 704.C(1)(a)–(f). The flexibility allowed under § 704.C(1) accommodates the variety of roads and traffic patterns experienced within the City.

Terrace Street runs parallel to State Street; the Gerlach property is to the north and east of the State House, on land that rises in elevation as one travels away from the State Capital Building. The Gerlachs contend that the project design properly manages access to the parking area because it is positioned at the apex of Terrace Street, thereby enabling motorists to anticipate and avert any potential conflicts. The Gerlachs continue by arguing that their proposal balances the need for safe and efficient traffic flow with the need for reasonable access to additional off-street parking within this portion of the Civic District.

---

[4] These principles include "[l]imiting the number of conflict points, . . . [s]eparating conflict points, . . . [s]eparating turning volumes from through movements, . . . [l]ocating traffic signals to facilitate traffic movement, . . . [m]aintaining a functional hierarchy of roadways, and . . . [l]imiting direct access on higher-speed roads." Regulations § 704.C(1)(a)–(f).

6

When viewing the facts in a light most favorable to the Gerlachs, we cannot conclude that Appellants are "so clearly correct as to be entitled to judgment as a matter of law" that the proposed parking area fails to employ the proper access-management techniques required by Regulations § 704.C(1). Berlin Dev. Assocs. v. Dep't of Soc. Welfare, 142 Vt. 107, 110 (1982). We therefore decline to enter summary judgment in Appellants' favor.

The second subsection implicated by Appellants' Question 10, Regulations § 704.C(2), states that "[p]arking spaces shall be separated from access lanes sufficiently to prevent conflicts with entering/departing vehicles." Regulations § 704.C(2). Appellants contend that the 6.25-foot distance between Terrace Street (i.e., the access lane) and the parking spaces is insufficient to prevent conflicts with other vehicles. The Gerlachs counter by maintaining that the 6.25-foot separation is more than adequate, considering their proposed parking area is located on top of a hill in a residential neighborhood, where the traffic volume is low and travels at slow rates of speed.

Whether the separation between Terrace Street and the proposed parking area is sufficient to prevent conflicts is a question of fact that is inappropriate for summary judgment. Particularly when viewing the facts in a light most favorable to the Gerlachs (as we must at this juncture), Appellants have not demonstrated as a matter of law that the proposed project does not comply with § 704.C(2). We therefore **DENY** Appellants' request for summary judgment on Question 10.

Finally, Appellants seek summary judgment on Question 15, which asks whether the proposed project provides for adequate pedestrian circulation through the use of pedestrian facilities. Regulations § 703.A(1) states that the project layout "shall provide for pedestrian circulation . . . . within a development between buildings and parking areas, to common areas within the development, [and] to adjacent properties." Regulations § 703.A(1). "Pedestrian facilities shall be required whenever necessary to serve existing or projected pedestrian traffic, to provide safety along vehicular traffic locations, or to provide connections to existing pedestrian facilities." Regulations § 703.A(2). Such facilities include "sidewalks, bicycle paths, or other facilities intended to serve any form of non-vehicular transportation." Regulations § 703.A(3).

Appellants contend that the Gerlachs' plan incorporates no pedestrian facilities, thus failing to provide for safe pedestrian circulation as required by § 703.A. According to Appellants, the proposed design forces vehicular occupants to choose one of two disfavored

7

walking options in order to reach the entrance of the parcel's office building: either traverse the wooded portion of the Gerlachs' parcel to reach the office building directly, or take a circuitous route around the neighboring properties to the east or west to the nearest roadway. The latter option forces pedestrians down the middle of Terrace Street, which is narrow and lacks sidewalks. The Gerlachs do not appear to contest the consequences of the proposed parking area. Rather, they maintain that because § 703.A is entitled "Purpose," it is a purpose provision that creates no enforceable regulatory requirements. We disagree.

Purpose statements in municipal zoning bylaws generally have "no direct regulatory effect." In re Meaker, 156 Vt. 182, 185 (1991). Such aspirational statements serve to guide the interpretation and enforcement of the bylaws' remaining regulatory provisions. This does not mean, however, that all purpose provisions contain no enforceable regulatory language. Despite the title of § 703.A, it contains unequivocal regulatory language that cannot be ignored. The design of a parking area "shall provide for pedestrian circulation," and "pedestrian facilities shall be required whenever necessary." Regulations § 703.A(1), (2). The word "shall" imposes a mandatory requirement. In re Verizon Wireless Barton Permit, No. 133-6-08 Vtec, slip op at 8 (Vt. Envtl. Ct. May 20, 2009) (Durkin, J.). We therefore conclude that the Gerlachs' proposed parking area must conform to these regulatory requirements.

Unresolved issues preclude us from summarily determining whether the Gerlachs' proposed parking area satisfies these requirements. Pedestrian facilities are to be used "whenever necessary to serve existing or projected pedestrian traffic, to provide safety along vehicular traffic locations, or to provide connections to existing pedestrian facilities." Regulations § 703.A(2). The Gerlachs assert that no facilities are necessary because the neighborhood is already heavily traveled by commuters and pedestrians bound for the nearby State Capital Building and related buildings; the Gerlachs assert that the addition of a few commuters will have only a negligible effect on the existing pedestrian traffic. Appellants maintain that pedestrian facilities must be provided to accommodate the inherent increase in pedestrian traffic that will result in five additional parking spaces.[5]

Whether pedestrian facilities are necessary to provide for whatever pedestrian circulation the proposed parking spaces will generate is a factual question not particularly suited for

---

[5] Whether the five proposed parking spaces will bring a measurable increase of vehicular or pedestrian traffic to this neighborhood is a material fact not resolved by the parties' pre-trial filings.

summary judgment. Appellants have not demonstrated as a matter of law that the proposed project has been materially remiss in this regard. Whether the Gerlachs' presentation in support of their parking proposal will be sufficient to satisfy the requirements of § 703.A will have to await trial.

When viewing these facts in a light most favorable to the Gerlachs, we cannot conclude on the facts before us that additional pedestrian facilities are necessary to support the proposed projected. We are therefore compelled to **DENY** Appellants' request for summary judgment on Question 15.

## Conclusion

For all the reasons more fully discussed above, when viewing the material facts in a light most favorable to the Gerlachs, we **DENY** Appellants' motion for summary judgment with regard to Questions 1, 10, and 15. In so doing, we have concluded that disputed material facts preclude us from determining whether the proposed parking area conforms to the screening and landscaping requirements of Regulations § 707.C. We have also concluded that Appellants have not established as a matter of law that the Gerlachs failed to employ proper access-management techniques pursuant to § 704.C(1) and that the parking area is sufficiently separated from Terrace Street to satisfy the requirements of § 704.C(2). Finally, we have concluded that unresolved issues preclude us from summarily determining whether additional pedestrian facilities are necessary to comply with Regulations § 703.A.

A pre-trial telephone conference will be scheduled with the Case Manager after January 1, 2010, to determine the scheduling of trial. The Court requests that the parties confer, so that they may be prepared to discuss at that conference the anticipated length and scheduling of trial.

Done at Berlin, Vermont, this 21st day of December 2009.

_____
Thomas S. Durkin, Environmental Judge

9